IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | Criminal Action No. 1:14-cr-376 (RDA) |
| CARESSA YVETTE PARDO, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant Caressa Yvette Pardo's ("Defendant") Emergency Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) ("Motion"). Dkt. Nos. 42; 43. Considering the Motion and the Government's Position (Dkt. 46), it is hereby ORDERED that the Motion is GRANTED.

### I.  BACKGROUND

On November 12, 2015, Defendant Caressa Pardo entered a pre-indictment guilty plea to conspiracy to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. § 846. Defendant was sentenced on April 8, 2015. The Court sentenced Defendant to 84 months of imprisonment and five years of supervised release. She began serving her sentence on May 20, 2015.

For most of the last six years, Defendant Pardo has been incarcerated at FCI Dublin, a minimum-security federal prison in northern California. The record reveals that she committed more than a dozen disciplinary infractions between 2015 and 2020; most of these infractions, however, were because she was found "in an unauthorized area." For these minor infractions, Defendant Pardo was sanctioned with loss of phone, email, and commissary privileges for

anywhere between one and three months. The record also suggests that the frequency of her disciplinary infractions waned over time.

In the final days of December 2020, Defendant was released from FCI Dublin. After serving 67 months of her 84-month sentence, she was released to a halfway house to serve the remainder of her sentence—then set to conclude in June of 2021. But a few weeks into the new year, halfway house staff discovered that Defendant had begun an inappropriate relationship with another resident. Fearing her violations of the residential facility's rules would result in her expulsion, Defendant absconded from the halfway house on January 23, 2021.[1] For this conduct, Defendant forfeited 242 days of good time credit she had accrued, and FCI Dublin's disciplinary committee also disallowed her an additional 51 days of good time credit for which she might have otherwise been eligible.

In March of 2021, Defendant Pardo learned she was pregnant. She then surrendered herself to the United States Marshals Service. From April 21, 2021 until October 1, 2021, Defendant was in custody at Santa Rita Jail—a facility located near FCI Dublin—serving time for her federal offense, which the Bureau of Prisons has appropriately credited toward the calculation of her term of imprisonment. On October 1, 2021, Defendant was transferred to FCI Dublin, where she remains incarcerated today. At a hearing on Defendant's disciplinary charges, she accepted responsibility for her actions, acknowledging her misconduct in a written letter and expressing what appears to be sincere remorse for her conduct. Following the hearing, the FCI Dublin disciplinary committee left its sanction intact, affirming its decision to withdraw a total of 293

---

[1] Defendant apparently attempted to contact the halfway house's director after absconding, but she remained at large for several weeks without returning to either the residential facility or FCI Dublin.

days' of Defendants' good time credit. Defendant Pardo has not committed any new disciplinary infractions since reporting to custody in April of 2021.

Defendant has faced significant complications during her pregnancy. The Court has reviewed Defendant's medical records in detail, as well as a sealed supplement Defendant has submitted in support of her emergency motion. It appears from the record that Defendant's personal medical circumstances could result in severe health complications at the time of her unborn child's birth, and her pregnancy is considered high risk due to her numerous health conditions. Defendant is expected to give birth on or around November 29, 2021.

According to the Bureau of Prisons, Defendant's anticipated release date is a little more than seven months from now, on June 25, 2022. And although she is eligible for release to home confinement on December 25, 2021, there has been no decision on potential release a little more than a month before her eligibility date. To date, Defendant has served nearly 75 months of her 84-month sentence—approximately 89% of her original sentence. She submitted a request for compassionate release to the Warden of FCI Dublin on September 29, 2021, and had not received a response by the time she filed this emergency motion on November 1, 2021. The Government filed its position on Defendant's emergency motion the following day.

## II. ANALYSIS

Defendant requests that, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), this Court release her from detention at FCI Dublin. Defendant asserts that she has exhausted administrative remedies, as she had not received a response from the warden thirty days after filing her request for compassionate release with FCI Dublin. The Government agrees. Recent authority from the Fourth Circuit makes clear that Defendant's motion is ripe for review. *See United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021) ("The text of § 3582(c)(1)(A) plainly provides that

a defendant may file a motion on [her] own behalf 30 days after the warden receives [her] request, regardless of whether the defendant exhausted [her] administrative remedies.").

Having determined that Defendant has satisfied the exhaustion requirement, the Court must next determine whether the "factors set forth in section 3553(a)" and "extraordinary and compelling reasons" warrant Defendant's release pursuant to 18 U.S.C. § 3582(c)(1)(A). *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020). Based on the unusual and urgent circumstances her case presents, the Court finds that Defendant has cleared this high hurdle.

The First Step Act, the statute authorizing courts to consider motions for compassionate release like the one Defendant brings, states that release is appropriate only in "extraordinary and compelling" circumstances. The text of the statute does not define the term, however, and Congress instead delegated to the United States Sentencing Commission ("the Sentencing Commission") the responsibility of defining the scope of that phrase. *Id*. Accordingly, 28 U.S.C. § 994(t) provides that:

> [t]he Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

28 U.S.C. § 994(t). The Sentencing Commission determined, in pertinent part, that:

> [u]pon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that – (1)(A) Extraordinary and compelling reasons warrant the reduction; . . .[2] (2) The defendant is not a danger to the safety of any other person

---

[2] Defendant is not "at least 70 years old," U.S.S.G. § 1B1.13, and thus, the omitted subsection (1)(B) is inapplicable to the case at hand.

4

or to the community, as provided in 18 U.S.C. § 3142(g); and (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

Further, the Sentencing Commission has indicated that if a defendant "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," then "extraordinary and compelling reasons exist" if the defendant's medical condition, age, family circumstances, or other reason justify such release. U.S.S.G. § 1B1.13, cmt. n. 1.

After the enactment of the First Step Act, many district courts, including this Court, have determined that the factors set forth in U.S.S.G. § 1B1.13, cmt. n. 1 "provide[ ] helpful guidance, but . . . do[ ] not constrain a court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)." *United States v. Rodriguez*, 451 F. Supp. 3d 392, 401 (E.D. Pa. 2020) (quoting *United States v. Beck*, 425 F. Supp. 3d 573, 582 (M.D.N.C. 2019)) (citing *United States v. Redd*, 444 F. Supp. 3d 717, 725-26 (E.D. Va. 2020) and other cases). To be sure, § 3582(c)(1)(A) "requires [ ] that sentence reductions be consistent with 'applicable policy statements.'" *McCoy*, 981 F.3d at 281 (quoting 18 U.S.C. § 3582(c)(1)(A)). And there remains "no 'applicable' policy statement governing compassionate-release motions filed by defendants under the recently amended § 3582(c)(1)(A), and as a result, district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *McCoy*, 981 F.3d at 284 (emphasis in original) (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)).

As such, this Court has "join[ed] other courts in concluding that a court may find . . . that extraordinary and compelling reasons exist based on facts and circumstances other than those set forth in U.S.S.G. § 1B1.13 cmt. n. 1(A)-(C). . . ." *Redd*, 444 F. Supp. 3d at 726. Accordingly, this Court will treat the § 1B1.13 cmt. n. 1(A)-(C) factors as a guide, but not as an exhaustive list of

circumstances that could justify compassionate release. *See also United States v. Jackson*, No. 3:17-cr-29-2, 2021 WL 1723653, at *1 (E.D. Va. Apr. 30, 2021) (finding "[t]he policy statements are not binding but are informative and may be considered") (citing *McCoy*, 981 F.3d at 276).

1. Extraordinary and Compelling Reasons

Defendant's medical conditions, combined with her high-risk pregnancy, demonstrate that "extraordinary and compelling reasons" warrant a reduction in the term of Defendant's imprisonment. The Government does not oppose her request, agreeing that Defendant's uncommon scenario presents a relatively rare case in which the compassionate-release standard is satisfied.

First, Defendant has shown that her incarceration and high-risk pregnancy pose significant, life-threatening risks to her unborn child. The Court has reviewed sealed material related to Defendant's specific medical conditions and finds that her specific medical circumstances are sufficiently acute to conclude that those underlying conditions, when combined with her high-risk pregnancy, constitute an "extraordinary and compelling" reason under the statute. 18 U.S.C. § 3582(c)(1)(A). Pregnant women in prison face special challenges. Continuing to be incarcerated during the last weeks of her high-risk pregnancy, giving birth while incarcerated, and separating Defendant from her newborn child following birth carries health risks for both Defendant and her baby. Put simply, Defendant Pardo will be unable to adequately care for herself and her unborn child in custody.

Other federal district courts evaluating the cases of pregnant inmates have reached similar conclusions. *See, e.g.*, *United States v. Morrissey*, No. 8:18-CR-275, 2020 WL 5849645 (D. Neb. Oct. 1, 2020) (ordering the release of pregnant woman one month before her due date, finding that her pregnancy, combined with her other health issues and COVID-19, qualified as an

"extraordinary and compelling" circumstance to warrant her early release); *United States v. Schneider*, No. 14-CR-30036, 2020 WL 2556354 (C.D. Ill. May 20, 2020) (ordering release of pregnant woman two months before her due date in case involving other underlying health conditions).  The Court relies on these closely analogous cases in reaching its conclusion that Defendant's case presents "extraordinary and compelling" circumstances.

Second, Defendant's high-risk pregnancy places her at high risk of serious COVID-19 complications.  Pregnant women face increased health risks if they contract COVID-19 compared to the general population. *See CDC, COVID-19: Pregnant and Recently Pregnant People* (Updated Aug. 16, 2021) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/pregnant-people.html (last visited Nov. 22, 2021).  This elevated risk continues for at least 42 days following the end of pregnancy.  *Id.*  The risk of severe illness and death for an incarcerated woman with underlying health conditions who contracts COVID-19 near the time of childbirth is not merely conjectural, as shown by the tragic death of a woman in federal custody last year a few weeks after giving birth via caesarean section and testing positive for the virus.  *See* Dkt. 42 at 6; https://www.bop.gov/resources/news/pdfs/20200428_press_release_crw.pdf (last visited Nov. 22, 2021).

Even though this Court recognizes that the Bureau of Prisons has taken extensive precautions to protect inmates from COVID-19, the virus presents a unique and serious threat to Defendant Pardo as a woman with pre-existing health conditions who is now in the late days of her pregnancy's third trimester.  The Court has reviewed the record and concludes that presence of the virus at Defendant's facility, combined with Defendant's particularized susceptibility to severe illness or death should she contract COVID-19, constitutes an extraordinary and compelling reason warranting her compassionate release.  *See United States v. Feiling*, No. 3:19-cr-112, 2020

7

WL 1821457, at *7 (E.D. Va. Apr. 10, 2020) ("[I]n the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility.").

2. 18 U.S.C. § 3553(a) Factors

As set forth above, in addition to considering whether Defendant's reasons for release are "extraordinary and compelling," the Court must consider the factors set forth in 18 U.S.C. § 3553(a). These factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for– (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . ; or (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements . . . ; (5) any pertinent policy statement . . . ; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). In this case, Defendant pleaded guilty to conspiracy to distribute methamphetamine. Her crime is, and remains, a serious one; the havoc wreaked by drug distribution in this country are well-documented and need not be recounted here. Even so, none of the section 3553(a) factors support incarcerating Defendant for nearly six more months. She is not a danger to the community, has a low risk of recidivism, and has put forward a viable release plan. The almost 79 months' incarceration Defendant has served sufficiently reflect the gravity of her offense, promotes respect for the law, and affords adequate deterrence to deter similar criminal conduct. In particular, the need to provide Defendant with appropriate "medical care . . . in the

most effective manner," *id.* § 3553(a)(2)(D), favors Defendant's release so that she may give birth—and be physically present for her child's formative early months—in a community setting.

Additionally, the Court will not disturb the supervised-release component of Defendant's sentence. Neither Defendant nor the Government argues otherwise. In the Court's view, maintaining a five-year term of supervised release is appropriate under 18 U.S.C. § 3553(a), as continued supervision will ensure that she complies with the terms the Court imposed. Should Defendant violate the terms of her supervision, including the prohibition against possessing controlled substances or firearms, she will be held to account for such violations.

***

The Court rests its decision on the truly "extraordinary and compelling" circumstances this case presents. Defendant's request for release is distinguished both by its facts—this Court has never before considered a compassionate-release motion from a pregnant woman with serious underlying health conditions in the ninth month of her pregnancy—and the response her request garnered from the Government, as evidenced in its position statement not opposing Defendant's emergency motion. Under these circumstances, the Court orders Defendant's compassionate release.

### III. CONCLUSION

Defendant has established that extraordinary and compelling reasons justify her release. Accordingly, for the foregoing reasons, it is hereby ORDERED that Defendant's Motion (Dkt. Nos. 42; 43) is GRANTED; and it is

FURTHER ORDERED that Defendant be released from custody pursuant to 18 U.S.C. § 3582(c), effective immediately; and it is

FURTHER ORDERED that Defendant abide by the standard supervised release conditions and the two special conditions of release the Court imposed in her case (Dkt.40); and it is

FURTHER ORDERED that within 72 hours of release, Defendant shall contact the United States Probation Office by phone for specific reporting instructions; and it is

FURTHER ORDERED that, pursuant to 18 U.S.C. § 3624, Defendant Pardo shall be released to home confinement. She shall reside at the home of her proposed custodian, her mother. Defendant shall be confined to the home—except when attending medical appointments or other activities approved by the United States Probation Office—until further order of the Court.

The Clerk is directed to forward a copy of this Order to Defendant's counsel, counsel for the Government, and the Warden at FCI Dublin.

It is SO ORDERED.

Alexandria, Virginia
November 22, 2021

/s/
Rossie D. Alston, Jr.
United States District Judge